# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 7:16po106 & 7:16po107 |
| ) | |
| MADISON N. PUCKETT ) | |

## MEMORANDUM OPINION

Madison N. Puckett ("Puckett") was charged with possession of marijuana in violation of 36 C.F.R. § 2.35(b)(2) and littering in violation of 36 C.F.R. § 2.14(a)(1) while on the Blue Ridge Parkway. In court, Puckett attempted to plead guilty to both charges, but did not admit ownership or knowledge of the existence of the glass pipe and accompanying residue that formed the basis of her marijuana possession charge. I found that there was an insufficient factual basis upon which to accept her guilty plea and the case proceeded to trial on both charges. At the conclusion of the evidence, I took the case under advisement to further consider the legality of the search of Puckett's vehicle and the sufficiency of the evidence to support the charges against her.

Having reviewed the record and the relevant case law, I find that the search of Puckett's vehicle that led to the discovery of the marijuana residue was improper under the Fourth Amendment. Therefore, the evidence obtained as a result of the search must be suppressed. I also find that there is insufficient evidence to convict Puckett of the littering charge. Accordingly, pursuant to Federal Rule of Criminal Procedure 29(a), I find that the evidence is insufficient to sustain a conviction. Puckett's charges will be dismissed in an accompanying order.

## FACTUAL BACKGROUND

On or about March 7, 2016 near Mile Marker 85 on the Blue Ridge Parkway, Ranger Holter found Puckett's vehicle lawfully parked in a parking space in the Peaks of Otter Lodge

parking lot.[1] He noticed that the vehicle had a flat left-side tire, that the vehicle was sitting on its rim, and saw that a note had been left by a person named "Maddie." The note stated that the vehicle's tire was flat and that the occupants were unable to replace the tire.[2] The ranger noticed pieces of tire on the exterior of the vehicle and followed additional tire debris up the road. Along the Parkway and approximately a "mile and change" from the parking lot, the ranger located a stack of interior vehicle mats on the road shoulder. On the opposite side of the road from the mats and approximately three-quarters of a mile from the parking lot, the ranger located a soda can, a cigarette pack, and a fast food receipt clustered together along the roadway. The trail of rubber pieces ended at the stack of mats.

When the ranger inspected the vehicle, he saw in plain view, sitting in the vehicle's center console what he determined to be a marijuana pipe.[3] He also noticed that the vehicle's registration and inspection sticker were expired and determined that there was no valid insurance coverage on the vehicle. The ranger then decided to tow the vehicle to an impound lot and conducted an inventory search before the vehicle was removed from the parking lot. During the search, Ranger Holter inspected the pipe and found what he believed to be marijuana residue based on his training and experience. He also found a straw that appeared to him to be modified for use in smoking marijuana, other narcotics, and rolling papers, none of which were in plain view from outside the vehicle.

Several days later, Puckett contacted the impound lot to ask about her car. Puckett and Ranger Holter spoke by phone and eventually met in person to discuss the marijuana pipe and the

---

1 According to the ranger, there are approximately forty parking spaces in this lot and Puckett's vehicle was the only car in the lot.
2 The ranger did not collect the note as evidence. The contents of the note are approximations and are based on the witnesses' recollection of what the note said.
3 The pipe, which the ranger presented during trial, was a purple glass figurine in the shape of an elephant with its trunk extended. In the elephant's back was a small depression. The pipe was small enough that it likely would have fit into a cube-shaped box that was three inches on each side. No one contested the fact that the item was a pipe.

litter. During one of their conversations, both Ranger Holter and Puckett recounted that Puckett "took responsibility" for the marijuana pipe and/or stated that it was "her responsibility." Puckett testified that she did not know the pipe was in the vehicle while she was driving and that it belonged to her cousin. She stated that she was taking responsibility for the pipe because it was found in her car

At trial, Puckett testified that she had been driving on the Parkway and had hit a raccoon and a lug nut, which caused her tire to go flat. She attempted to turn around to find the nearest parking area, but the vehicle became stuck in the soft ground on the side of the road. Puckett used her interior mats to get the car back onto the road and stated that she forgot to pick up the mats from the roadside. She testified she did not put anything onto the road except for the mats. She drove the car to the Peaks of Otter Lodge parking area and left a note indicating that her tire was flat, and that she intended to return the next day to retrieve the vehicle. She used the telephone in the Peaks of Otter hotel to call someone to pick her up. When she returned to the parking area the next day around 12:45 p.m., she realized that the vehicle had been towed.

## ANALYSIS

There are three issues to be resolved in this case: (1) whether the ranger had probable cause to search Puckett's vehicle based on the presence of the marijuana pipe and whether he was permitted to search the vehicle without a warrant; (2) alternatively, whether the ranger's decision to impound the vehicle and perform an inventory search was proper; and (3) whether there are sufficient facts to find Puckett guilty beyond a reasonable doubt of littering and possessing marijuana.

Probable Cause

"The Fourth Amendment generally requires police to secure a warrant before conducting a

search." Maryland v. Dyson, 527 U.S. 465, 466 (1999). However, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment [] permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). This exception is based on an automobile's "ready mobility" and a reduced expectation of privacy in a vehicle, "owing to its pervasive regulation." Id. The Supreme Court has clarified the so-called automobile exception since its first appearance in Carroll v. United States, 267 U.S. 132 (1925). In Dyson, the Court "disavow[ed] the existence of any such separate requirement" of exigent circumstances to trigger the exception. U.S. v. Brookins, 345 F.3d 231, 237 (4th Cir. 2003) (citing Dyson, 527 U.S. at 467)). The exception applies when officers have probable cause to believe an automobile contains contraband and it is readily mobile. Dyson, 527 U.S. at 467. The fact that an officer had time to obtain a warrant in a particular case is not a relevant factor for consideration. See id. (finding that the warrantless search of an automobile was proper based on a reliable tip received at 11 a.m. that a car containing drugs was scheduled to return to an officer's jurisdiction at 1 p.m.); Brookins 345 F.3d at 239 (reversing a district court's determination that officers lacked probable cause to conduct a warrantless search of a vehicle used in a recent crime when that vehicle was parked in a driveway and unoccupied). In Brookins, the Fourth Circuit found that the automobile exception applied to an unoccupied, parked vehicle because the exception required only that that vehicle be "readily mobile" and that officers have probable cause to search it.

 Here, the vehicle was not "readily mobile" and the ranger did not have probable cause to conduct a warrantless search based only upon his identification of what he believed to be a marijuana pipe. As to probable cause, the ranger testified that he could observe a marijuana pipe from his vantage point outside the vehicle, but that he could not see any residue at that time. It was only after the ranger conducted the search that he could confirm the existence of the marijuana

4

residue (by sight and smell) that formed the basis of the possession charge. It is not a crime in Virginia or in the Code of Federal Regulations to simply possess a glass pipe such as the one found in Puckett's car.[4] It is the presence of identifiable marijuana or its residue that is unlawful, not possession of the pipe itself. Simply seeing the pipe inside the vehicle, without more, does not provide the ranger with probable cause to believe that evidence of a crime will be located inside the vehicle. Thus, the ranger's testimony that he could observe what he believed to be a marijuana pipe – without seeing or confirming the existence of marijuana or residue – cannot form the basis of probable cause to search Puckett's vehicle. But see United States v. Morgan, 2009 WL 116034, at *5 (W.D. Va. Apr. 30, 2009) (proposing a finding that the discovery of unidentified methamphetamine "smoking devices" formed the basis of probable cause to continue the search of a purse that began as a screening for weapons during a traffic stop).

Even if the ranger had probable cause to search based on the presence of the pipe, Puckett's vehicle was not "readily mobile." Both Puckett and the ranger testified that the vehicle's tire was flat; indeed, that was the reason Puckett abandoned the car in the first place. The ranger testified that the car was sitting on its rim and that pieces of the damaged tire were found on the vehicle and the roadway. Puckett testified that the tire went flat after she struck two objects, and that in attempting to turn the vehicle around, she became stuck. She left a note indicating the vehicle was disabled, and that she would return to fix or retrieve it. Puckett's vehicle, unlike the one in Brookins, was in no condition to be driven and was not readily mobile. Accordingly, the automobile exception did not apply to Puckett's car and any search without a warrant was

---

4 Federal law does prohibit the sale, offering, import, export, or the use of a "facility of interstate commerce" to transport "drug paraphernalia." 21 U.S.C. § 863. Even if this provision did apply to Puckett, the determination of whether a particular item qualifies as drug paraphernalia requires consideration of additional information not in evidence. This additional evidence includes instructions or advertising concerning an item's use, the scope of the item's legitimate use, or expert testimony concerning its use. The ranger's testimony that he identified the pipe as a marijuana pipe may, in fact, be correct. However, without additional information about the device, I cannot determine whether it qualifies as drug paraphernalia under this code provision.

5

impermissible.

Inventory Search

At trial, the government argued that the ranger's search of the vehicle was a lawful inventory search following the ranger's decision to tow and impound it. An inventory search is "'the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage.'" United States v. Stitt, 382 F. App'x 253, 255 (4th Cir. 2010) (quoting Whren v. United States, 517 U.S. 806, 811 n. 1 (1996)). Police do not need a warrant or even probable cause to conduct an inventory search. See United States v. Brown, 787 F.2d 929, 931 (4th Cir. 1986) (quoting Illinois v. Lafayette, 462 U.S. 640, 643 (1983) (holding that these searches are "'a well-established exception to the warrant requirement of the Fourth Amendment.'")). If a vehicle is in lawful police custody, the police may conduct an inventory search. Id. For the inventory search to be valid, the ranger's decision to impound the vehicle must have been "reasonable under the circumstances." Id. at 932.

In Stitt, the Fourth Circuit upheld the validity of an inventory search of a suspect's vehicle following his arrest. There, officers initiated a traffic stop when they observed the defendant's vehicle exceeding the posted speed limit. The driver pulled over into a strip club parking lot in a way that blocked traffic within the lot; he then ran from the scene. The court upheld the officers' decision to impound the vehicle and perform an inventory search because the driver had been validly arrested, the vehicle was parked in a high-crime area, and left so that it was blocking traffic. See also United States v. Fort, 313 Fed. App'x 665, 668 (4th Cir. 2009) (upholding an inventory search of a vehicle police decided to tow because the driver was experiencing a medical emergency and was unable to consent to release of the vehicle to another person).

Here, I find that the decision to impound Puckett's vehicle was not reasonable under the circumstances. At trial, the ranger testified that the vehicle had been parked in the Peaks of Otter Lodge parking lot for what he estimated to be "in the neighborhood" of twelve hours. The vehicle was lawfully occupying a single space in a forty-space parking lot that was otherwise empty.[5] The lot had no time restrictions for parking and it was not closed to the public. Puckett left a note on her car explaining what had happened and alerted the reader that she would return to retrieve the car the next day.[6] When she did return to the parking lot at around 12:45 p.m., her car had already been removed. Based on these facts, I find that there was no reasonable basis for impounding Puckett's vehicle; accordingly, the inventory search performed pursuant to the impound procedure was improper.

Because the evidence against Puckett was obtained in violation of her Fourth Amendment rights, the evidence must be suppressed. With the evidence of the pipe, residue, and other questionable drug materials excluded, there is insufficient evidence to find Puckett guilty of possession of a controlled substance, to wit, marijuana, and the charge against her must be dismissed.

Littering

Puckett was also charged with violating 36 C.F.R. § 2.14(a)(1) which makes it unlawful to "dispos[e] of refuse in other than refuse receptacles" based on the trash and vehicle mats that the ranger found along the Parkway. I find that there is insufficient evidence to sustain a conviction for

---

[5] The government argued that pursuant to 36 C.F.R. § 2.22, the ranger was entitled to impound the vehicle because it interfered with "visitor safety, orderly management of the park area, or present[ed] a threat to park resources." I find that a single vehicle, lawfully parked in an otherwise empty parking lot open to the public did not interfere with visitor safety or orderly management of the park and thus this provision is inapplicable. There was no testimony that the vehicle posed any type of threat.

[6] The only unlawful circumstances surrounding the vehicle's presence in the lot was the fact that the registration and inspection were expired and the ranger believed it had no valid insurance coverage. These facts also do not provide a reasonable basis for the ranger to impound the car.

7

littering based on either the mats or the trash.

"Refuse" is not defined in the C.F.R. but the Merriam-Webster dictionary defines the word as "[a]nything discarded or worthless; trash; rubbish." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 1095 (William Morris, ed. 1979). Puckett admitted that she accidentally left the vehicle's floor mats on the side of the road after using them to get her car back onto the pavement. However, accidentally leaving property along the roadside does not necessarily equate to littering, just as leaving a jacket or cell phone unattended along a trail or other park property would not constitute littering. Leaving unattended items in the park that are not clearly "refuse" cannot sustain a conviction for littering.

The soda can, receipt, and cigarette pack found along the Parkway do constitute refuse, and discarding them on the road would indeed be littering in violation of the C.F.R. However, there was no testimony linking these items to Puckett. The ranger testified that he found these items clustered together approximately three-quarters of a mile from Puckett's vehicle and on the opposite side of the road from the mats the morning after Puckett testified she had gotten stuck on the Parkway. There was no evidence that any of the items belonged to Puckett or that she had discarded them on the road. There was also a significant period of time that passed between Puckett's car trouble and the ranger's discovery of the trash. Accordingly, I find that there is an insufficient temporal and spatial link between the trash and Puckett to find her guilty beyond a reasonable doubt of littering and this charge must also be dismissed.

## CONCLUSION

For the reasons outlined above, I find that the marijuana pipe, residue, and other materials located inside of Puckett's car were unlawfully obtained in violation of the Fourth Amendment and must be excluded from evidence. Therefore, the charge of possession of marijuana must be

8

Case 7:16-po-00107-RSB   Document 4   Filed 06/24/16   Page 8 of 9   Pageid#: 12

dismissed. I also find that the evidence is insufficient to sustain a conviction for littering and that this charge must also be dismissed. Puckett's charges will be dismissed in an accompanying order.

        Entered: June 24, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

9